## Hellen *versus* Bryson and Wife.

*Notice to sue Principal, when sufficient to discharge Surety.—Notice to Husband not valid as against Wife.*

Where a father, sued as surety for his son, on a promissory note given for money borrowed from a married woman, set up in defence a notice to her husband (who also held a similar claim against them) "to go on and collect the money loaned, or he would not be accountable any longer," without specifying whether it was the money loaned by the wife or the husband, it was *Held*, That the notice, even if sufficient in other respects, was not a notice to the wife, and did not discharge the surety.

ERROR to the Common Pleas of *Fayette county*.

This was an action of debt on a joint and several single bill, brought by John K. Bryson and Catherine his wife, to the use of said Catherine, *v.* P. H. Hellen and Benjamin Hellen.

The bill on which suit was brought was to Mrs. Catherine Bryson, her heirs and assigns, for $225, dated September 4th 1852, and payable one year after date, in current bank notes, with interest.

The interest had been paid to John K. Bryson for the years 1853, 1854, and 1855, as per receipts endorsed on the note. P. H. Hellen was the principal debtor to whom the money had been loaned, Benjamin, his father, being surety.

To a declaration in the usual form the defendants severally pleaded payment, and payment with leave, &c.

It was in evidence that John K. Bryson, above named, held a bill single, dated December 20th 1851, against the same parties.

In February 1856, P. H. Hellen failed, confessed judgments for these and other claims, and then executed a general assignment in trust for creditors. The defence set up in the court below by Benjamin Hellen was, that in May or June of the year 1854, he had notified John K. Bryson to "*to go on and collect it,*" that he "*would not stand accountable any longer for it.*"

The court below (GILMORE, P. J.) instructed the jury that inasmuch as there was no evidence that the notification was given to Mrs. Bryson, a notice to the husband was not sufficient to discharge the surety, she being here and competent; that it made no difference whether Mr. Bryson had possession of the note or not, and directed a verdict for plaintiffs.

There was a verdict and judgment accordingly. Whereupon the defendant sued out this writ, and assigned for error the instruction of the court as above stated.

*James Veech*, for plaintiff in error.—The notice to Bryson is admitted as to the claim for which B. Hellen was surety, to wit, one for $225, and one for $750, making, as Bryson admitted at the time, about $1000; and the only question is, whether

[Hellen v. Bryson and Wife.]

Mrs. Bryson, to whose use the action is brought, is affected by it. There is no evidence that the money loaned belonged to Mrs. Bryson before marriage, or that it came to her afterwards by "descent, conveyance, or otherwise." The husband held the note and collected the interest. Against his creditors her claim would not stand for an instant; why should it fare better as against a surety?

The ruling of the court below seems to be based upon the earlier decisions of this court on the Married Woman's Act, but is not in accordance with those decided since 1851.

*D. Kaine*, for defendant in error.—The note in this case belonged to Mrs. Bryson. It was in her name, and the suit was brought under the Act of April 25th 1850, § 39, for her use. The basis of the argument of the plaintiff in error is the assumption of the fact of ownership by the husband, not only without but against evidence.

There was not such notice in this case as the law requires: Greenawalt *v.* Kreider, 3 Barr 267; Cope *v.* Smith, 8 S. & R. 116; 1 Gr. Ev. § 200.

The opinion of the court was delivered, November 18th 1861, by

THOMPSON, J.—We need not discuss the marriage relations in this case, but rather the relations of the parties in this issue to each other. The plaintiff in error became security in a note for money borrowed of Mrs. Bryson. Being sued on this engagement, he relies on an equity to save him from accountability, to wit: that he notified Bryson, the husband, to "go on and to collect" the money loaned, " or that he would not stand accountable any longer," without saying by whom loaned, his wife and himself both having loaned money to the same man, and with the defendant as his surety. Now, the defence set up is, that as Mrs. Bryson did not after notice proceed to collect her debt from the principal, and who, in consequence of delay, became insolvent, it would be inequitable to permit her to collect it from the surety. The difficulty is not in the doctrine, but in the absence of the fact necessary to make it applicable. No notice was given to her. The equity invoked did not arise. Notice to the husband, especially where he held a note himself similarly secured, was no notice to the wife. Nor would it necessarily appear to have been so intended in this case, for the reasons stated. In all proceedings affecting a wife's interest, the law requires notice, and equity will hardly be less regardful of her rights than the law. In divisions of estates, or in suits for torts, or on contract engagements, the law requires her to be notified, when sought to be affected, and to raise an equity

[Hellen *v.* Bryson and Wife.]

against her, we think her title to notice is equally strong. It is possible a summons or notice designed for a wife, delivered to a husband at or about his home, might be good, but to affect her the notice must be for her, and then it is a question of service. But here there was no notice, and the defendant had no right to the equity relied on to shield him from responsibility.

The judgment below is therefore affirmed.